IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHERYL HALL FRAZIER** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 1:08-CV-221-MHT |
| | ) | |
| **ARGENT MORTGAGE COMPANY, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

**COMES NOW** Defendant Argent Mortgage Company, LLC ("Argent" or "defendant") and, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves to dismiss the Complaint filed by Plaintiff Cheryl Hall Frazier ("plaintiff") for failure to state a claim upon which relief can be granted. In the alternative, Argent moves, pursuant to Rule 12(e) of the Federal Rule of Civil Procedure, for a more definite statement of the claims against it.

In support thereof, Argent states as follows:

### I. INTRODUCTION

Plaintiff alleges that she obtained a loan from Argent on September 9, 2005, and she now asks the Court for "[a] judgment voiding Plaintiff's mortgage," based on her allegation that her loan is still "subject to the right to cancel." However, plaintiff acknowledges that foreclosure was "initiated," and a foreclosure sale was held on March 25, 2008. Under federal law, the foreclosure sale terminates any right to rescind which plaintiff may have had, and plaintiff's Complaint is devoid of any allegation that she attempted to exercise her rescission rights before the foreclosure sale.

1660052 v1

Moreover, plaintiff premises her claim that she has a right to rescind ***two-and-a-half years after closing*** on the ill-defined allegation that her September 9, 2005 "Truth-in-Lending disclosure statement . . . understates the finance charge . . . ." Such a vague and ill-defined allegation does not meet the standards for pleading set out by the United States Supreme Court in its recent *Twombly* decision, and as such, plaintiff's Complaint should be dismissed under Rule 12(b)(6). In the alternative, if the Court opts not to dismiss these claims, Argent asks, pursuant to Rule 12(e), that plaintiff be required to provide a more definite statement of her claims and state the grounds she has for alleging that the "finance charge" disclosed to her on August 9, 2005 was "understated."

Finally, plaintiff's claim for "statutory damages" relating to her August 9, 2005 loan is time-barred based on the one-year statute of limitations provided in 15 U.S.C. § 1640(e).

## II. FACTS

The following facts are alleged in plaintiff's Complaint and in documents referenced in her Complaint:

1. Plaintiff alleges that she obtained a "$80,700 mortgage loan" from Argent on September 9, 2005, more than two-and-a-half years ago.[1]

2. On September 9, 2005, plaintiff signed a note obligating her to repay the principal amount of $80,700 over a thirty-year period.[2] At the time, plaintiff signed a "Truth-in-Lending

---

[1] *See* Doc 1, Compl., at ¶ 5.

[2] *See* "Fixed Rate Note," attached hereto as Ex. A (with loan numbers redacted). The Court may consider the loan documents referenced in the Complaint under Rule 12(b)(6). *See* Doc 1, Compl., at ¶ 6. And even if the Court determines that the "Fixed Rate Note" was not itself incorporated into plaintiff's Complaint, the Court may still dispose of the matter under Rule 12(b)(6) and not under summary judgment as provided for in Rule 56: "[A] document central to the complaint that the defendant appends to its motion to dismiss is properly considered, provided that the contents are not in dispute." *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999). In this case, the contents of the loan documents signed by the plaintiff do not appear

Disclosure Statement" and acknowledged Argent's disclosure to her that the "Amount Financed" was "$75,409.36" and that total "Finance Charge" (including amounts paid upfront and included in the principal, as well interest payments over the thirty-year life of the loan) was "$113,020.29."[3]  She also signed a "Settlement Statement" and acknowledged Argent's disclosure of the receipts and disbursements made on her loan.[4]

3.   On September 9, 2005, plaintiff also signed Argent's "NOTICE OF RIGHT TO CANCEL" form and acknowledged receipt of this form informing her that she had three business days, following the date of the transaction/receipt of the "notice of right to cancel" form (i.e., until "09/13/05") *or* following her receipt of "Truth in Lending disclosures," in which to cancel the transaction.[5]

4.   Plaintiff alleges that she "has given notice of her election to rescind," but she does not say when she allegedly did so.[6]

5.   Plaintiff alleges via her Complaint filed March 26, 2008 -- more than two-and-a-half years after obtained her loan -- that the "finance charge" disclosed to her on September 9,

---

to be in dispute: "'Undisputed' in this context means that the authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

[3] *See* "Truth-in-Lending Disclosure Statement," attached hereto was Ex. B (with loan numbers redacted).  Per footnote 2. above, the Court may consider this document on a Rule 12(b)(6) motion, and this document is explicitly referenced in plaintiff's Complaint.  *See* Doc. 1, Compl., at ¶ 7.

[4] *See* "Settlement Statement," attached hereto as Ex. C (with loan numbers redacted).  Per footnote 2. above, the Court may consider this document on a Rule 12(b)(6) motion, and this document is explicitly referenced in plaintiff's Complaint.  *See* Doc. 1, Compl., at ¶ 7.

[5] *See* "NOTICE OF RIGHT TO CANCEL," attached hereto as Ex. D (with loan numbers redacted).  Per footnote 2. above, the Court may consider this document on a Rule 12(b)(6) motion.

[6] *See* Doc. 1, Compl., at ¶ 13.

2005 was "understated" by "more than 1/2 of 1% of the amount of the loan" and by "more than $433.50."[7]

6.  Plaintiff alleges that a foreclosure has been initiated on her September 9, 2005 loan.[8] In fact, a foreclosure sale was held on March 25, 2008,[9] the day before Plaintiff brought her present claims.

### III. ARGUMENT

A.  **Plaintiff's Complaint For Rescission Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff's Complaint Does Not Allege Sufficient Facts To Render Plaintiff's Rescission Claims Plausible, Or, In The Alternative, Plaintiff Should Be Required To Provide A More Definite Statement Under Rule 12(e) Establishing Her Right To Rescisison.**

The Supreme Court recently enunciated what a plaintiff must plead to avoid dismissal of her complaint under Rule 12(b)(6):

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than mere labels and conclusions, and *a formulaic recitation of the elements of a cause of action will not do*. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).[10]

---

[7] *See id.* at ¶¶ 9-10.

[8] *Id.* at ¶ 11.

[9] *See* "Foreclosure Deed," attached hereto as Ex. E. Per footnote 2. above, the Court may consider this document on a Rule 12(b)(6) motion.

[10] *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007) (emphasis added; citations omitted).

Federal regulations interpreting TILA have two subsections discussing the effect of foreclosure on the statutory right to rescind. This first is subsection (h), entitled "Special rules for foreclosures."[11] This subsection provides, in relevant part:

> (1) Right to rescind. After the *initiation of foreclosure* on the consumer's principal dwelling that secures the credit obligation, the consumer shall have the right to rescind if:
>
> (i) A mortgage broker fee that should have been included in the finance charge was not included; or
>
> (ii) The creditor did not provide the properly completed appropriate model form in Appendix H of this part, or a substantially similar notice of rescission.
>
> (2) Tolerance for disclosures. After the *initiation of foreclosure* on the consumer's principal dwelling that secures the credit obligation, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge:
>
> (i) is understated by no more than $35; or
>
> (ii) is greater that the amount required to be disclosed.[12]

In other words, the initiation of the foreclosure process will itself limit the consumer's right to rescind. Notably, plaintiff here has **_not_** made any allegations in her Complaint that Argent failed to include any specific "mortgage broker fee" in the "finance charge" disclosed to her on September 9, 2005, and plaintiff was provided notice of her right to rescind on September 9, 2005.[13]

Moreover, once the foreclosure process is complete and a foreclosure sale has taken place, another subsection, subsection (a)(3), extinguishes the right to rescind entirely: "If the

---

[11] 12 C.F.R. § 226.23(h).

[12] *Id.* (emphasis added).

[13] *See* Exs. B & D, attached hereto.

required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, *or upon sale of the property*, whichever occurs first."[14]  The staff commentary to this subsection (a)(3) explains: "A sale or transfer need not be voluntary to terminate the right to rescind. *For example, a foreclosure sale would terminate an unexpired right to rescind*."[15]

For example, the Sixth Circuit Court of Appeals has adopted as its own the reasoning of the district court in *Worthy v. World Wide Financial Services., Inc.*, 347 F. Supp.2d 502 (E.D. Mich 2004), *aff'd* 2006 Fed. App. 0525N (6th Cir. July 28, 2006). In *Worthy*, the district court followed the staff commentary to 12 C.F.R. § 223.26(a)(3) and explained: "The language of the statute, read in a light most favorable to Plaintiff borrower, does not provide Plaintiff with a right to rescind the mortgage transaction after the foreclosure auction."[16]  The *Worthy* court dismissed the plaintiff's complaint for failure to state a claim under Rule 12(b)(6): "Plaintiff had no right to rescind the refinancing mortgage transaction after the foreclosure auction. Thus, viewing the evidence in the light most favorable to Plaintiff, Plaintiff did not rescind the transaction when he sent a letter to Defendants after the foreclosure auction."[17]  Here, as in *Worthy*, there is *no* allegation in plaintiff's Complaint that plaintiff attempted rescission before the foreclosure sale on March 25, 2008.

---

[14] 12 C.F.R. § 226.23(a)(3) (emphasis added).

[15] *See* 12 C.F.R. 226, Supp. I (emphasis added).

[16] *Worthy*, 347 F. Supp.2d at 507.

[17] *Id.*

However, even were we, contrary the admonition of the Supreme Court in *Twombly*,[18] to read into plaintiff's Complaint an (unpled) allegation that plaintiff attempted to give notice of rescission ***before*** the foreclosure sale, this would still not establish plaintiff's right to rescind. The Truth-in-Lending Act prescribes a narrow window of time in which to exercise rescission rights -- namely, "until midnight of the ***third business day*** following the consummation of the transaction or the delivery of the information and the rescission forms required under this section together with a statement containing all the material disclosures."[19] However, if such disclosures are never provided, the "right of rescission shall expire ***three years*** after the date of consummation of the transaction."[20]

Here, plaintiff seeks to circumvent the three-business-day period (and avail herself of the full three years) by alleging that Argent failed to provide "all the material disclosures" because the "finance charge" was allegedly "understated" by "more than $433.50," which is more than "$35.00" and "more than 1/2 of 1% of the amount of the loan."[21] Such an allegation, however, is exactly the type of "***formulaic recitation of the elements***" which the Supreme Court in *Twombly* said should be addressed by a Rule 12(b)(6) motion. Nowhere does plaintiff allege how the disclosed "finance charge" of "$113,020.29"[22] was understated, much less identify specifically

---

[18] *See Twombly*, 127 S.Ct. at 1965, n. 3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

[19] 15 U.S.C. § 1635(a) (emphasis added).

[20] 15 U.S.C. § 1635(f) (emphasis added).

[21] *See* Doc. 1, Compl., at ¶¶ 9-11.

[22] *See* Ex. B, attached hereto.

which charges disclosed on the "Settlement Statement"[23] should have been included in the "finance charge" but were not. Such allegations (not included in plaintiff's Complaint) would be necessary in order for Argent to be able to evaluate plaintiff's claims.[24]

Under *Twombly*, a complaint must, on its face, allege enough facts to render plaintiff's claims not just conceivable, but plausible.[25] By merely alleging an "understatement" in excess of "$433.50" -- which is not an amount that appears anywhere in the "Settlement Statement"[26] but which, presumably, seeks to represent "1/2 of 1% of the amount of the loan"[27] -- plaintiff's Complaint in this case does not provide sufficient detail to bring plaintiff's claims out of the realm of the conceivable into the realm of the plausible, nor does it provide "fair notice" of the "grounds" on which her claims rest.[28] As such, plaintiff's claims should be dismissed under Rule 12(b)(6).

In the alternative, if Plaintiffs' claims are not dismissed outright under *Twombly*, Argent is entitled to a more definite statement, under Rule 12(e) of ***how*** the "finance charge" was

---

[23] *See* Ex. C, attached hereto.

[24] *See, e.g., Marquez v. New Century Mortgage Corp.*, No. 03 C 7136, 2004 WL 742205, at *3 (N.D. Ill. Apr. 5, 2004) (granting lender's Rule 12(b)(6) motion and noting that "any finance charges disclosed to plaintiffs must be reduced by the charges which should not have been included in their TILA documents"); *O'Brien v. J.L. Kilsak Mortgage Corp.*, 934 F. Supp. 1348, 1357 (S.D. Fla. 1996) (analyzing when third-party fees should be included in the finance charge and when such fees should not be included).

[25] *Twombly*, 127 S. Ct. at 1974.

[26] *See* Ex. C, attached hereto.

[27] The amount of "$433.50" may reflect a typographical error in plaintiff's Complaint, as "1/2 of 1%" of $80,700 is $403.50.

[28] *Twombly*, 127 S. Ct. at 1965, n.3.

"understated" and the "grounds" plaintiff has for thinking that the "finance charge" of "$113,020.29" was "understated," such that Argent can frame a responsive pleading.

### B. Plaintiff's Claim For "Statutory Damages" Is Untimely.

Regardless of whether plaintiff has a rescission claim, it is clear that her claim for "statutory damages"[29] is untimely. A Rule 12(b)(6) motion to dismiss for failure to state a claim is proper "when failure to comply with the statute of limitations is plain on the face of the complaint."[30] In this case, the statute under which plaintiff seeks relief provides, in relevant part: "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, *within one year from the date of the occurrence* of the violation."[31] Plaintiff obtained her loan on September 9, 2005.[32] As such, plaintiff's Complaint for "statutory damages," filed *more than two-and-a-half years later* on March 26, 2008, was clearly filed outside of the statute's one-year limitations period, and plaintiff has not pled any facts to permit tolling of the one-year limitations period.[33] Thus, the sole question before the Court is whether plaintiff has a right to rescind her loan, not whether plaintiff is entitled to "statutory damages."

---

[29] *See* Doc. 1, Compl., at "WHEREFORE" ¶ following numbered ¶ 16.

[30] *Foster v. Savannah Comm.*, 140 Fed.Appx. 905, 907 (11th Cir. 2005); *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982).

[31] 15 U.S.C. § 1640(e) (emphasis added).

[32] *See* Doc. 1, Compl., ¶ 5.

[33] *See Williams v. Saxon Mortgage Servs., Inc.*, No.Civ.A. 06-0799-WS-B, 2007 WL 282752, at *3 (S.D. Ala. Sept. 27, 2007).

## IV. CONCLUSION

WHEREFORE, Argent asks that this Court dismiss plaintiff's claims or, in the alternative, require plaintiff to provide a more definite statement of her claims to explain the "grounds" supporting her claims that the "finance charge" of "$113,020.29" was "understated."

Respectfully submitted,

s/ Stephen J. Bumgarner
Stephen J. Bumgarner (BUM001)

Attorney for Defendant
Argent Mortgage Company, LLC

**OF COUNSEL:**

BURR & FORMAN LLP
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
sbumgarn@burr.com

## CERTIFICATE OF SERVICE

    I hereby certify that on April 22, 2008, I electronically filed the foregoing with the Clerk of Court using the Court's Electronic Filing system, which will automatically send notification of such filing to the following:

> Earl P. Underwood, Jr., Esq.
> Law Offices of Earl Underwood
> P.O. Box 969
> Fairhope, Alabama  36533-0969

                                        s/ Stephen J. Bumgarner
                                        OF COUNSEL

Exhibit A

Loan No. 0███████████

# FIXED RATE NOTE
### THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

September 9, 2005　　　　　White Plains　　　　　NY
[Date]　　　　　　　　　　　　[City]　　　　　　　　　[State]

105 TV ROAD, DOTHAN, AL 36301
[Property Address]

1. **BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 80,700.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Argent Mortgage Company, LLC.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.750 %.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**
   (A) Time and Place of Payments
   I will pay principal and interest by making payments every month.
   I will make my monthly payments on the first day of each month beginning on November 1, 2005.
   I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on October 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

   I will make my monthly payments at:　505 City Parkway West, Suite 100, Orange, CA 92868

   or at a different place if required by the Note Holder.

   (B) Amount of Monthly Payments
   My monthly payments will be in the amount of U.S. $523.42.

4. **BORROWER'S RIGHT TO PREPAY**
I may repay this Note at any time as provided for in this paragraph. If within the first 3.00 year(s) from the date of execution of the Mortgage, Deed of Trust or Security Deed which secures this Note, I prepay in any 12 month period an amount exceeding 20% of the original principal balance under this Note, I will pay a prepayment charge to Note Holder equal to six (6) months advance interest on the amount prepaid in excess of 20% of the original principal balance under this Note.

5. **LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (I) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**
   (A) Late Charges for Overdue Payments
   If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder.
   The amount of the charge will be the lesser of 5.000 % of the overdue payment of principal and interest or $100.00. I will pay this late charge promptly but only once on each late payment.

   (B) Default
   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C) Notice of Default
   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

Initials: C.H.

1 of 2

09/08/2005 11:14:51 AM

200-1UNIV (Rev. 03/05)

  Loan No.

**(D). No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to Pay all of the amounts owed under this Note.

**9. WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.
If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
Borrower: CHERYL HALL
SSN:

_____ (Seal)
Borrower:
SSN:

_____ (Seal)
Borrower:
SSN:

_____ (Seal)
Borrower:
SSN:

Initials:

09/08/2005 11:14:51 AM

200-2UNIV (Rev. 03/05)

Exhibit B

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

☐ Preliminary   ☒ Final

LENDER: Argent Mortgage Company, LLC
44 South Broadway, 16th Flr
White Plains, NY 10604
(866)345-6334

Borrowers: CHERYL HALL

Broker License: Exempt

Type of Loan: FIXED RATE
Date: September 9, 2005
Loan Number: 00██████████

Address: 105 TV ROAD
City/State/Zip: DOTHAN, AL 36301

Property: 105 TV ROAD, DOTHAN, AL 36301

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.390% | $113,020.29 | $75,409.36 | $188,429.65 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $523.42 | 11/01/2005 | | | |
| 1 | $521.87 | 10/01/2035 | | | |

**VARIABLE RATE FEATURE:**
☐ Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 105 TV ROAD, DOTHAN, AL 36301

**ASSUMPTION:** Someone buying this property
☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:** You may obtain property insurance from anyone you want that is acceptable to Argent Mortgage Company, LLC

**LATE CHARGES:** If a payment is late, you will be charged the lesser of 5.000% of the overdue payment or $100.00.

**PREPAYMENT:** If you pay off your loan early, you
☒ may   ☐ will not   have to pay a penalty.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____  9/9/05     _____
Borrower- CHERYL HALL         Date        Borrower                    Date

_____            _____
Borrower                    Date           Borrower                    Date

TIL1 (08/2005) Rev.01                                09/08/2005 11:14:51 AM

Exhibit C

**SETTLEMENT STATEMENT**
Optional Form for
Transactions without Sellers

U.S. DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT
OMB Approval No. 2502-0265 (expires 8/30/2006)

File Number: B22080
Loan Number: 0085●●●●●●9605
Mtg. Ins. Case Number:

| | |
|---|---|
| NAME OF BORROWER: | Cheryl Hall |
| ADDRESS: | 105 TV Road, Dothan, AL 36301 |
| NAME OF LENDER: | Argent Mortgage |
| ADDRESS: | One City Boulevard West, Orange, CA 92868 |
| PROPERTY ADDRESS: | 105 TV Road, Dothan, AL 36301 |
| SETTLEMENT AGENT: | First National Financial Title Services, of Alabama, Inc. |
| PLACE OF SETTLEMENT: | 1950 Stonegate Drive, Suite 150, Vestavia Hills, AL 35242 |
| Loan Number: 0085107315-9605 | SETTLEMENT DATE: 09/09/2005  DISBURSEMENT DATE: 09/14/2005 |

| L. Settlement Charges | | M. Disbursement to Others | |
|---|---|---|---|
| 800. Items Payable in Connection with Loan | | 1501. Payoff:70781448-9 | 56,501.10 |
| 801. Loan Origination Fee 3.000% to Dana Capital Group, Inc. | 2,421.00 | to Countrywide Home Loans, Inc. | |
| 802. Loan Discount 1.000% to Argent Mortgage | 807.00 | 1502. | |
| 803. Appraisal Fee to Spencer Moore   P.O.C.250.00 | | | |
| 804. Credit Report | | 1503. | |
| 805. Underwriting Fee to Argent Mortgage | 650.00 | | |
| 806. Processing Fee to Dana Capital Group, Inc. | 590.00 | 1504. | |
| 807. Assumption Fee | | | |
| 810. Tax Related Service Fee to Argent Mortgage | 70.00 | 1505. | |
| 811. Flood Fee to Argent Mortgage | 9.00 | | |
| 900. Items Required by Lender to be Paid in Advance | | 1506. | |
| 901. Interest From 09/14/2005 to 10/01/2005 @$14.9200 per day | 253.64 | | |
| 902. Mortgage Insurance Premium for to | | 1507. | |
| 903. Hazard Insurance Premium for to | | | |
| 904. | | 1508. | |
| 1000. Reserves Deposited with Lender | | | |
| 1001. Hazard Insurance   9 mo. @ $ 84.67 per month | 762.03 | 1509. | |
| 1002. Mortgage Insurance   mo. @ $       per month | | | |
| 1003. City Property Tax   mo. @ $       per month | | 1510. | |
| 1004. County Property Tax  2 mo. @ $ 46.40 per month | 92.80 | | |
| 1005. Annual Assessments  mo. @ $       per month | | 1511. | |
| 1006.   mo. @ $       per month | | | |
| 1007.   mo. @ $       per month | | 1512. | |
| 1008.   mo. @ $       per month | | | |
| 1100. Title Charges | | 1513. | |
| 1101. Settlement or closing fee to First National Financial Title Services | 450.00 | | |
| 1102. Abstract or title search to First National Financial Title Services | | 1514. | |
| 1103. Title examination to First National Financial Title Services | 200.00 | | |
| 1104. Title insurance binder to First National Financial Title Services | | 1515. | |
| 1105. Document Preparation to First National Financial Title Services | | | |
| 1106. Notary Fees to First National Financial Title Services | | 1516. | |
| 1107. Attorney's fees to First National Financial Title Services | | | |
|   (Includes above items No. ) | | 1517. | |
| 1108. Title Insurance to First National Financial Title Services | 202.50 | | |
|   (Includes above items No. ) | | 1518. | |
| 1109. Lender's Policy $ 80, 700.00 - 202.50 | | | |
| 1110. Owner's Policy $ - | | 1519. | |
| 1111. Postage and Shipping to First National Financial Title Services | 100.00 | | |
| 1112. Release Tracking Fee to First National Financial Title Services | 15.00 | 1520. TOTAL DISBURSED | 56,501.10 |
| 1113. Wire Fee to First National Financial Title Services | 25.00 | (enter on line 1603) | |
| 1200. Government Recording and Transfer Charges | | N. NET SETTLEMENT | |
| 1201. Recording Fees : Mortgage $56.00 | 56.00 | | |
| 1202. City/County tax/stamps | | 1600. Loan Amount | 80,700.00 |
| 1203. State Tax/Stamps : Mortgage $121.05 | 121.05 | | |
| 1300. Additional Settlement Charges | | 1601. PLUS Cash/Check from Borrower | 0.00 |
| 1301. Survey | | | |
| 1302. Pest Inspection | | 1602. MINUS Total Settlement Charges | 22,561.78 |
| 1303. Payoff #5518210046744 to Friedmans Jewelers | 400.00 | (line 1400) | |
| 1304. Payoff #78045214 to Small Loans | 399.00 | 1603. MINUS Total Disbursements to Others | 56,501.10 |
| 1305. Payoff #995012784122300094 to Farmers Furn | 154.00 | (line 1520) | |
| 1306. Payoff #78045041 to Small LNS | 59.00 | | |
| 1307. Payoff #E-865 to J & Z Property Management Co. | 14,288.00 | 1604. EQUALS Disbursements to borrower | 1,637.12 |
| 1308. 2005 Property Taxes to Houston County Tax Collector | 559.76 | (after expiration of any applicable | |
| 1400. Total Settlement Charges  (enter on line 1602) | 22,561.78 | rescission period required by law) | |

I have carefully reviewed the HUD-1A Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account in this transaction. I further certify that I have received a copy of the HUD-1A Settlement Statement.

_Cheryl Hall_ (signature)

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause funds to be disbursed in accordance with this statement.

_(signature)_  Date 9/9/05
Settlement Agent

The recording services and overnight charge/courier fee include the actual outside vendor charges as well as fees and costs to First National Financial Title Services, Inc. for preparation, delivery, copying, tracking and management.

TitleExpress Settlement System  Printed 09/09/2005 at 09:55 NH                                         form HUD-1A (2/94) ref. RESPA

Exhibit D

# NOTICE OF RIGHT TO CANCEL

LENDER:      Argent Mortgage Company, LLC            DATE: September 9, 2005
BORROWER(S): CHERYL HALL                             LOAN NO.: 0█████████605
                                                     TYPE: FIXED RATE

ADDRESS:       105 TV ROAD
CITY/STATE/ZIP: DOTHAN, AL 36301

PROPERTY:      105 TV ROAD
               DOTHAN, AL 36301

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

   | DOCUMENT SIGNING DATE |
   |---|
   | 09/09/2005 |

   ; or

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC                ATTN: Post Close Dept.
Attn: Post Close Dept. 19th Floor           FAX:  (714)347-1575
3 Park Plaza
Irvine, CA 92614

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

| FINAL DATE TO CANCEL |
|---|
| 09/13/2005 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____           _____
SIGNATURE                                 DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower, and/or individual with an interest in the property to be taken as collateral in this transaction has the right to cancel. The exercise of this right by one borrower, and/or individual with an interest in the property shall be effective to all borrowers and individuals with an interest in the property.

_[signed]_                           9-9-05
BORROWER/OWNER CHERYL HALL           Date         BORROWER/OWNER                             Date


BORROWER/OWNER                       Date         BORROWER/OWNER                             Date


1064-NRC (06/2005) Rev.01                                                09/08/2005 11:14:51 AM

Exhibit E

SEND TAX NOTICE TO:
Citi Residential Lending, Inc.
505 City Parkway West
Orange, CA 92868
(#0086107315)

DEED  665  719
Recorded In Above Book and Page
04/21/2008 11:08:46 AM
Luke Cooley
Judge of Probate
Houston County, Alabama

STATE OF ALABAMA  )

COUNTY OF HOUSTON)

<u>FORECLOSURE DEED</u>

KNOW ALL MEN BY THESE PRESENTS, that

WHEREAS, heretofore, on, to-wit: the 9th day of September, 2005, Cheryl Hall, an unmarried woman, executed that certain mortgage on real property hereinafter described to Argent Mortgage Company, LLC, which said mortgage was recorded in the Office of the Judge of Probate of Houston County, Alabama, in Mortgage Book 1762, Page 661, said mortgage having subsequently been transferred and assigned to Deutsche Bank National Trust Company, as Trustee, in trust for the registered holders of Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2006-W1, ("Transferee"); and MTGASG Book 91 page 220.

WHEREAS, in and by said mortgage, the Transferee was authorized and empowered in case of default in the payment of the indebtedness secured thereby, according to the terms thereof, to sell said property before the Courthouse door in the City of Dothan, Houston County, Alabama, after giving notice of the time, place, and terms of said sale in some newspaper published in said County by publication once a week for three (3) consecutive weeks prior to said sale at public outcry for cash, to the highest bidder, and said mortgage provided that in case of sale under the power and authority contained in same, the Transferee or any person conducting said sale for the Transferee was authorized to execute title to the purchaser at said sale; and it was further provided in and by said mortgage that the Transferee may bid at the sale and purchase said property if the highest bidder thereof; and

WHEREAS, default was made in the payment of the indebtedness secured by said mortgage, and the said Deutsche Bank National Trust Company, as trustee, in trust for the registered holders of Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2006-W1 did declare all of the indebtedness secured by said mortgage, subject to foreclosure as therein provided and did give due and proper notice of the foreclosure of said mortgage by publication in the <u>Dothan Eagle</u>, a newspaper of general circulation published in Houston County, Alabama, in its issues of February 14, 2008, February 21, 2008, and February 28, 2008; and

DEED   665   720

WHEREAS, on March 25, 2008, the day on which the foreclosure was due to be held under the terms of said notice, between the legal hours of sale, said foreclosure was duly conducted, and Deutsche Bank National Trust Company , as trustee, in trust for the registered holders of Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2006-W1 did offer for sale and sell at public outcry in front of the Courthouse door in Dothan, Houston County, Alabama, the property hereinafter described; and

WHEREAS, Joe Fant as President of Joe Fant Auctioneer, Inc. was the auctioneer who conducted said foreclosure sale and was the person conducting the sale for the said Deutsche Bank National Trust Company , as trustee, in trust for the registered holders of Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2006-W1; and

WHEREAS, Deutsche Bank National Trust Company , as trustee, in trust for the registered holders of Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2006-W1 , was the highest bidder and best bidder in the amount of Ninety-Two Thousand Eight Hundred Two And 33/100 Dollars ($92,802.33) on the indebtedness secured by said mortgage, the said Deutsche Bank National Trust Company , as trustee, in trust for the registered holders of Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2006-W1, by and through Joe Fant as President of Joe Fant Auctioneer, Inc. as auctioneer conducting said sale and as attorney-in-fact for said Transferee, does hereby grant, bargain, sell and convey unto Deutsche Bank National Trust Company , as trustee, in trust for the registered holders of Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2006-W1 , all of its right, title, and interest in and to the following described property situated in Houston County, Alabama, to-wit:

> Lot 2, Block C, according to the map of survey of Third Addition to Television Heights Subdivision as recorded in Plat Book 7, Page 23, in the Probate Office of Houston County, Alabama.

TO HAVE AND TO HOLD the above described property unto Deutsche Bank National Trust Company , as trustee, in trust for the registered holders of Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2006-W1  its successors/heirs and assigns, forever; subject, however, to the statutory rights of redemption from said foreclosure sale on the part of those entitled to redeem as provided by the laws in the State of Alabama; and also subject to all recorded mortgages, encumbrances, recorded or unrecorded easements, liens, taxes, assessments, rights-of-way, and other matters of record in the aforesaid Probate Office.

DEED 665 721

IN WITNESS WHEREOF, Deutsche Bank National Trust Company, as trustee, in trust for the registered holders of Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2006-W1, has caused this instrument to be executed by and through Joe Fant as President of Joe Fant Auctioneer, Inc., as auctioneer conducting said sale and as attorney-in-fact for said Transferee, and said Joe Fant as President of Joe Fant Auctioneer, Inc., as said auctioneer and attorney-in-fact for said Transferee, has hereto set his/her hand and seal on this March 25, 2008.

Deutsche Bank National Trust Company, as trustee, in trust for the registered holders of Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2006-W1

By: Joe Fant Auctioneer, Inc.
Its: Auctioneer and Attorney-in-Fact

By: _____
Joe Fant, President

STATE OF ALABAMA    )

COUNTY OF JEFFERSON    )

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Joe Fant, whose name as President of Joe Fant Auctioneer, Inc. acting in its capacity as auctioneer and attorney-in-fact for Deutsche Bank National Trust Company, as trustee, in trust for the registered holders of Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2006-W1, is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this date, that being informed of the contents of the conveyance, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation acting in its capacity as auctioneer and Attorney-in-fact for said Transferee.

Given under my hand and official seal on this 03/25/2008.

_____
Notary Public
My Commission Expires: MY COMMISSION EXPIRES FEBRUARY 11, 2012

This instrument prepared by:
Colleen McCullough
SIROTE & PERMUTT, P.C.
P. O. Box 55727
Birmingham, Alabama 35255-5727



Recording Fee        19.00
TOTAL                19.00